**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

UNITED STATES OF AMERICA *ex rel.* )
SHARON JOYCE,                        )
                                     )
        Plaintiffs,              )
                                     )
      vs.                        )
                                     )
GLOBAL OFFICE FURNITURE LLC          )
and MALCOM E. SMITH,                 )
                                     )
        Defendants.              )
_____)

No. 2:20-cv-01223-DCN

**ORDER**

This matter is before the court on plaintiff-relator Sharon Joyce's ("Joyce")

motion to dismiss defendants Global Office Furniture LLC (the "Company") and

Malcom E. Smith's ("Smith") (together, the "Defendants") counterclaims, ECF No. 67.

For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

In this qui tam action, Joyce alleges that Smith and the Company, her former

employers, submitted false documents to U.S. Customs and Border Protection,

understating the value of office chairs imported from China. ECF No. 50, Gov't's

Compl. ("Compl.") ¶¶ 2, 3. Smith owned and operated the Company, which specializes

in the sale of office furniture. Id. ¶¶ 10–11. Joyce served as the Company's vice

president of operations before departing in December of 2019. Id. ¶ 12. After leaving

the Company, Joyce filed the instant suit (the "qui tam claim" or "qui tam action") on

March 30, 2020. ECF No. 1, Pl.'s Compl.

The United States of America (the "government") filed a complaint in

intervention ("complaint") on July 15, 2025. Compl. The government asserts that

1

Defendants' alleged fraudulent scheme allowed them to avoid "millions of dollars in customs duties" between July of 2019 and September of 2023. Compl. ¶¶ 2–4. Defendants filed an amended answer to the complaint on November 19, 2025, in which they also asserted two counterclaims against Joyce: one for unjust enrichment and another for abuse of process. See ECF No. 65 ¶¶ 1–28. Defendants generally allege that Joyce was stealing the Company's inventory and selling it on Facebook Marketplace during her employment with the Company, effectively stealing "hundreds of thousands of dollars worth of property from Defendants." Id. ¶¶ 4–5. Defendants eventually "caught [Joyce] stealing and profiting" from their property, which allegedly formed "part of the motivation" for Joyce to bring her qui tam action. Id. ¶ 9. Joyce purportedly "stole, deleted, and/or destroyed" the Company's business records prior to bringing the qui tam action. Id. ¶ 10. Thereafter, according to Defendants, Joyce "cherry picked" certain documents that supported her claims against them. Id. ¶ 11. Defendants further allege that Joyce told several of the Company's employees that she would "take down" Smith and the Company and ensure Smith "ended up in jail." Id. ¶¶ 8, 18.

On December 1, 2025, Joyce moved to dismiss the Defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing the court lacks subject-matter jurisdiction over the unjust enrichment claim, and Rule 12(b)(6), asserting that Defendants have failed to state a claim for both the unjust enrichment and abuse of process claims. ECF No. 67 at 1. Defendants responded in opposition on December 15, 2025, ECF No. 68, to which Joyce replied on December 17, 2025, ECF No. 69. The court held a hearing on the motion on April 9, 2026. ECF No. 77. As such, the motion is fully briefed and now ripe for the court's review.

## II.  STANDARD

### A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Federal courts are not courts of general jurisdiction; they are only able to adjudicate suits where jurisdiction is authorized under Article III of the Constitution or statutes enacted by Congress pursuant to Article III.  Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).  This jurisdictional requirement is known as subject-matter jurisdiction.  See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004).  Without subject-matter jurisdiction, a federal court lacks the "statutory or constitutional power to adjudicate the case."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis in original).  As such, "there is no presumption that the court has jurisdiction."  Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999) (citing Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 327 (1895)).

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge whether a federal court has subject-matter jurisdiction to adjudicate the claims before it.  Fed. R. Civ. P. 12(b)(1).  The burden of proving subject-matter jurisdiction rests with the non-moving party.  Evans v. B.F. Perkins, Co., 166 F.3d 642, 647 (4th Cir. 1999).  When the movant challenges the sufficiency of the complaint's jurisdictional allegations, "the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged."  Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).  But, when the movant challenges the veracity of the complaint's jurisdictional allegations, "the trial

3

court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." Id.

**B. Motion to Dismiss for Failure to State a Claim**

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, the court does not accept as true any allegations that are merely "[t]hreadbare recitals of the elements of a cause of action, supported by . . . conclusory statements[.]" Ashcroft, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Allegations that

are "merely consistent with" a defendant's liability "stop[ ] short of the line between possibility and plausibility of entitlement to relief. " Twombley, 550 U.S. at 557 (internal quotation marks and citation omitted).  Determining whether a complaint states a plausible claim for relief is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679.

### III.  DISCUSSION

The court first takes up Joyce's Rule 12(b)(1) argument to determine whether there is subject-matter jurisdiction over the unjust enrichment claim.[1]  The court will then address Joyce's Rule 12(b)(6) challenge to Defendants' abuse of process claim to determine whether the claim is plausibly alleged.

### A.  Subject-Matter Jurisdiction: Unjust Enrichment Claim

28 U.S.C. § 1367 gives federal courts "supplemental jurisdiction" to adjudicate state law claims that "form part of the same case or controversy" as a claim over which the district court has original jurisdiction.  28 U.S.C. § 1367(a).  Courts in the Fourth Circuit adhere to the brightline rule that only compulsory counterclaims "form part of the same case or controversy" as a jurisdictional anchor claim while their permissive counterparts require an independent jurisdictional basis.  See Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988); Ginwright v. Exeter Fin. Corp., 2016 WL 5867443, at *2 (D. Md. Oct. 6, 2016).  For a counterclaim to be compulsory, it must satisfy the requirements of Federal Rule of Civil Procedure 13(a); namely, it must "arise[ ] out of the [same]

---

[1] Because the court concludes that jurisdiction is lacking over the unjust enrichment claim, it will not address Joyce's alternative argument that the claim is subject to dismissal under Rule 12(b)(6). See, e.g., Fleming v. Mabus, 2016 WL 8669945, at *5 n.9 (D. Md. Sept. 30, 2016).

transaction or occurrence" as the opposing party's claim.  See Fed. R. Civ. P.

13(a)(1)(A); see also Painter, 863 F.2d at 330–34 (affirming district court's denial of

motion to dismiss for lack of subject-matter jurisdiction over a counterclaim because the

counterclaim was compulsory under Rule 13(a)).  The parties agree that subject-matter

jurisdiction turns on whether the unjust enrichment claim is compulsory or permissive—

i.e., whether Rule 13(a) is satisfied or is not.  See ECF Nos. 67 at 5–6, 68 at 7.  The court

will thus determine whether the unjust enrichment claim "arises out of the [same]

transaction or occurrence" as the qui tam claim to determine whether it has subject-matter

jurisdiction over the counterclaim.  See Fed. R. Civ. P. 13 (a)(1)(A).

The Fourth Circuit has set forth four questions to inform the district court's

analysis of whether two claims arise out of the same transaction or occurrence:

- (1) Are the issues of fact and law raised in the claim and counterclaim largely the same?

- (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule?

- (3) Will substantially the same evidence support or refute the claim as well as the counterclaim?

- (4) Is there any logical relationship between the claim and counterclaim?

Painter, 863 F.2d at 331.  The questions are "less a litmus, [and] more a guideline[,]" and

the court need not answer each question in the affirmative to find a counterclaim to be

compulsory.[2]  Id.

---

[2] At this early stage of the proceedings, Joyce does not challenge the veracity of the allegations in the unjust enrichment counterclaim, and so, the court will "apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." See Kerns, 585 F.3d at 193.

6

### 1. Similarity of Factual and Legal Issues

On the first question, Joyce argues the claims are factually and legally distinct even though both facially involve Defendants' property.  See ECF No. 67 at 6–7.  Joyce notes, for example, that the complaint alleges that Defendants "act[ed] in concert with a Chinese manufacturer" to "fraudulently avoid the customs duties owed to the United States on office chairs imported from . . . China" in violation of federal customs laws and the False Claims Act.  Id. at 6 (citing Compl. ¶¶ 2–3).  The unjust enrichment counterclaim, Joyce asserts, primarily centers on unrelated allegations that she stole and subsequently sold Defendants' property on Facebook marketplace.  ECF No. 67 at 7 (citing ECF No. 65 ¶¶ 4–7).  As for legal issues, Joyce argues the primary issue in the qui tam action is "whether Defendants' invoices and entry documents were false . . . and whether proper tariffs were paid[,]" which she views as "entirely unrelated to the issue of whether Joyce took the chairs . . . and unjustly retained the proceeds."  ECF No. 67 at 6–7.

In opposition, Defendants emphasize both claims involve their chairs and that "facts involving [Joyce's] role in [Defendants'] business is [sic] part of both the False Claims Act case and the unjust enrichment claim."  ECF No. 68 at 7.  Defendants also claim, without any corresponding citation, that Joyce's "retention of funds" could "act as

a set off to any damages and could indeed disqualify Joyce from receiving any portion of a potential recovery." Id. at 7–8.

The court agrees with Joyce. While both claims consist of allegations that facially involve Defendants' chairs,[3] the chairs are factually relevant to each claim for entirely different reasons, and the legal issues presented by each claim are distinct. The qui tam claim requires proof that Defendants knowingly submitted false documents to avoid paying full customs duties on the chairs imported from China. See Compl. ¶¶ 3, 14–15, 18; 31 U.S.C. § 3729(a)(1)(G) (providing for civil penalties when a defendant "knowingly makes[ ] . . . a false record or statement material to an obligation to pay . . . the Government[.]"). Conversely, the unjust enrichment claim requires a showing that Joyce stole Defendants' property, sold it on Facebook marketplace, and unjustly retained the proceeds. See ECF No. 65 ¶¶ 24–28; Inglese v. Beal, 742 S.E.2d 687, 690 (S.C. Ct. App. 2013) ("A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." (citation omitted)). Therefore, the central issues of the qui tam claim and the unjust enrichment counterclaim arise from distinct factual circumstances and raise unrelated legal questions. Compare Compl. ¶¶ 3, 15–15,

---

[3] The court notes that the word "chair" appears nowhere in Defendants' counterclaims. See ECF No. 65. Instead, Defendants' counterclaims only use the terms "furniture" and "property" to describe the items allegedly stolen by Joyce. ECF No. 65 ¶¶ 9, 13, 25, 27.

18, with ECF No. 65 ¶¶ 24–28.  As such, the first Painter answer weighs in favor of finding Defendants' unjust enrichment counterclaim to be permissive.

### 2. Res Judicata

On the second question, the court considers whether res judicata would bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule. Painter, 863 F.2d at 331.  If res judicata would not bar Defendants from subsequently litigating their unjust enrichment counterclaim, then this factor favors finding the counterclaim to be permissive.  See, e.g., Ginwright, 2016 WL 5867443, at *4.  Generally speaking, res judicata, or claim preclusion, provides that a final judgment on the merits of an action prevents a party from relitigating claims in a second action that could have been raised in the first.[4]  See Venture Eng'g, Inc. v. Tishman Constr. Corp., 600 S.E.2d 547, 550 (S.C. Ct. App. 2004).  In South Carolina, res judicata "may apply if (1) the identities of the parties are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior adjudication of the action by a court of competent jurisdiction."  Hughes v. Bank of Am. Nat'l Ass'n, 898 S.E.2d 102, 130–31 (S.C. Ct. App. 2024) (citation omitted).

Joyce contends that none of the three elements are met here, and so, this answer favors finding the counterclaim to be permissive.  ECF No. 67 at 7–8.  The court agrees with Joyce that the second element—the requirement that "the subject matter" of the first suit be "the same as in the prior litigation[ ]"—would not be met if res judicata were asserted in subsequent litigation.  See Hughes, 898 S.E.2d at 130–31.  This is because, as

---

[4] Joyce analyzes res judicata under South Carolina law.  ECF No. 67 at 7. Defendants do not contest this choice, see ECF No. 68, and so, the court will apply South Carolina law in analyzing this question.

9

outlined above, the unjust enrichment counterclaim and the qui tam claim arise from

distinct factual circumstances even if both ostensibly relate to Defendants' property.  See

Martin v. Keith, 52 S.E.2d 22, 24 (S.C. 1947) (holding that res judicata did not bar the

customer of a mechanic from asserting a claim against mechanic for leaving his vehicle

exposed to weather when the customer had already litigated a claim and delivery action

to re-possess the same vehicle from the mechanic because the "identity of the subject-

matter" element was not met despite both claims involving the customer's car).  Because

the claims do not involve the same subject matter, res judicata would not bar a

subsequent suit against Joyce for unjust enrichment.[5]  Accordingly, the second Painter

answer weighs in favor of finding the unjust enrichment claim to be permissive.

### 3. Similarity of Evidence

The next question asks whether substantially the same evidence will support or

refute both the anchor claim and counterclaim.  Painter, 863 F.2d at 331.  Joyce argues

"there is little to no overlap" here because the qui tam claim will consist of "documentary

---

[5] The court is less certain the remaining two elements of res judicata would not be
met if Defendants asserted their unjust enrichment claim in a subsequent suit.  On
identity of the parties, "courts across the country are divided on whether res judicata bars
a qui tam action on behalf of the . . . government, when the . . . government was not a
party to the prior state action creating the preclusive effect."  See Peterson v. Wainwright,
2025 WL 2602280, at *10 (E.D.N.C. Jul. 10, 2025) (collecting cases to demonstrate lack
of consensus as to how government's position in qui tam cases impacts identity of the
parties for purposes of res judicata).  Moreover, applying res judicata in the context of the
Painter questions necessarily implies that the current suit has resulted in a final
adjudication on the merits.  See, e.g., Casero v. McNulty, 2019 WL 5309601, at *6 (D.
Md. Oct. 21, 2019) (assuming certain claims "had reached a final judgment on the
merits" when performing res judicata analysis in context of Painter questions).  These
issues demonstrate the inherent "difficulty of using a res judicata test to distinguish
between permissive and compulsory counterclaims."  See Painter, 863 F.3d at 333.
Failure to satisfy the identity of the subject matter element is, however, sufficient to
establish that res judicata would not bar subsequent litigation of the unjust enrichment
counterclaim, and so, the court need not further address the remaining two elements.

and testimonial evidence related to the importation and declaration of chairs from China." ECF No. 67 at 13. Proving Defendants' unjust enrichment claim, Joyce explains, will require "documentary and testimonial evidence about whether Joyce took and sold any chairs after they were imported, whether she had authorization to do so, and whether retention of the funds . . . is unjust." Id. (emphasis in original). Defendants offer no counter argument on this factor, see ECF No. 68, and the court finds Joyce's reasoning persuasive. As such, the third Painter answer weighs in favor of finding the unjust enrichment counterclaim to be permissive.

### 4. Logical Relationship

The final question asks whether there is a logical relationship between the claim and counterclaim. Painter, 863 F.2d at 331. Joyce asserts that "[a]t most, some of the chairs on which the Government alleges Defendants evaded tariffs may be the same chairs that Defendants allege Joyce later took and sold." ECF No. 67 at 8. Joyce further reasons that "whether proper tariffs were paid on the chairs has no bearing on whether Joyce later took the chairs without permission[ ]" nor does Joyce's alleged misappropriation of the chairs have any "bearing on whether [a] tariff was paid." Id. at 8–9. Moreover, "[t]he employer-employee relationship alone" that previously existed between Joyce and the Company "cannot provide the basis for [a] logical relationship between claims and counterclaims." See Haynes v. S. Carolina Waste LLC, 633 F. Supp. 3d 769, 779 (D.S.C. 2022) (citing Alley v. Quality Eco Techs., LLC, 2021 WL 1196188, at *14 (E.D. Va. 2021)). Without any response from Defendants on the fourth Painter question, see ECF No. 68, the court finds that it weighs in favor of finding the unjust

enrichment counterclaim to be permissive.  As such, each <u>Painter</u> answer favors finding the unjust enrichment counterclaim to be permissive.

Having considered each of the <u>Painter</u> questions, the court finds that the unjust enrichment counterclaim and <u>qui tam</u> claim do not arise from the same transaction or occurrence, making the unjust enrichment claim a permissive counterclaim.  <u>See</u> Fed. R. Civ. P. 13(a)(1)(A); <u>Painter</u>, 863 F.2d at 331.  Because it is permissive, the court lacks supplemental jurisdiction over the unjust enrichment counterclaim.  <u>See</u> <u>Painter</u>, 863 F.2d at 331; 28 U.S.C. § 1367(a).  Without jurisdiction, the court will grant Joyce's motion to dismiss the unjust enrichment counterclaim for lack of subject-matter jurisdiction.

**B.  Failure to State a Claim: Abuse of Process**

Joyce moves to dismiss Defendants' abuse of process claim pursuant to Rule 12(b)(6), arguing Defendants have failed to adequately plead the elements of this tort. ECF No. 67 at 12–19.  Abuse of process provides a remedy "for one damaged by another's perversion of a legal procedure for a purpose not intended by the procedure." <u>Argo v. Three Rivers Behav. Ctr. & Psychiatric Sols.</u>, 697 S.E.2d 551, 556 (S.C. 2010). The elements of an abuse of process claim under South Carolina law are "(1) an ulterior purpose, and (2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding."  <u>Pallares v. Seinar</u>, 756 S.E.2d 128, 133 (S.C. 2014).

An ulterior purpose exists when "process is used to secure an objective that is 'not legitimate in the use of process.'"  <u>Id.</u> (quoting <u>D.R. Horton, Inc. v. Wescott Land Co.</u>, 730 S.E.2d 340, 352 (S.C. Ct. App. 2012)).  Because "[t]he tort centers on events occurring outside the process[,]" the ulterior purpose "usually takes the form of coercion to obtain a collateral advantage[ ] [that is] not properly involved in the proceeding itself,

such as the surrender of property or the payment of money, by the use of the process as a threat or club." Pallares, 756 S.E.2d at 134. "There is in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." Huggins v. Winn-Dixie Greenville, Inc., 153 S.E.2d 693, 694 (S.C. 1967).

To satisfy the ulterior purpose element, the process must, additionally, be instituted "against another primarily to accomplish a purpose for which it is not designed[.]" Pallares, 756 S.E.2d at 133–34 (emphasis in original) (quoting Food Lion, Inc. v. United Food & Comm. Workers Int'l Union, 567 S.E.2d 251, 255–56 (S.C. Ct. App. 2002)). As such, the ulterior purpose "must be the 'sole or paramount reason for acting.' " Pallares, 756 S.E.2d at 134 (quoting Food Lion, 567 S.E.2d at 256) (emphases added). An allegation of "bad motive or [ ] ulterior purpose in bringing an action, standing alone, is insufficient to sustain an abuse of process claim." Pallares, 756 S.E.2d at 134 (quoting D.R. Horton, 730 S.E.2d at 352 (internal quotation marks omitted)); see also Hainer v. Am. Med. Int'l, Inc., 492 S.E.2d 103, 107 (S.C. 1997) (holding that carrying out process "to its authorized conclusion, even though with bad intentions[ ]" does not constitute abuse of process).

Joyce argues that Defendants have failed to adequately allege this element because they fail to identify any ulterior purpose beyond commencing and maintaining this lawsuit. ECF No. 67 at 15. She asserts Defendants' allegations are "circular" because they imply that this litigation alone constitutes an ulterior purpose. Id. According to Joyce, Defendants must allege that she sought to compel Defendants to take some action not contemplated by the process itself to plead an ulterior purpose. Id. But

13

Defendants' counterclaim, Joyce contends, "is devoid of any allegations—or even inferences—that Joyce brought this False Claims Act case to coerce Defendants to do anything not contemplated by the process itself." Id. (emphasis in original).

In opposition, Defendants re-state many of the allegations in their abuse of process counterclaim but neglect to provide any legally supported explanation as to how those allegations constitute an ulterior purpose. See ECF No. 68 at 4–7.

Upon reviewing the allegations, the court agrees with Joyce that Defendants' allegations relating to the instant litigation cannot satisfy the ulterior purpose element of an abuse of process claim. Take first the allegation that Joyce sought to persuade the federal government to bring criminal charges and civil claims against Defendants. ECF No. 65 ¶¶ 16–17. Seeking the government's assistance to bring claims on its behalf, however, is the essence of a qui tam claim. See Food Lion, Inc., 567 S.E.2d at 75 (quoting Kirchner v. Greene, 691 N.E.2d 107, 116–17 (Ill. App. Ct. 1998) ("The mere use of legal process . . . does not constitute abuse of process.")); United States ex rel. Littlewood v. King Pharms., Inc., 806 F. Supp. 2d 833, 836 (D. Md. 2011) (discussing statutory framework of False Claims Act, which permits private parties to bring civil actions in the government's name and allows the government to intervene within a prescribed period of time). Defendants further allege that Joyce's claims are "unsupported" and the information she provided to the government is "not fully truthful[.]" Id. ¶ 17. Disputing the veracity of a plaintiff's allegations—hardly a rare occurrence in any lawsuit—does not transform a lawsuit into an abuse of process. See Food Lion, Inc., 567 S.E.2d at 74–75 (first citing Huggins, 249 S.E.2d at 697; then citing Kirchner, 691 N.E.2d at 116–17). Nor would Joyce "impugn[ing] the credibility of

14

Defendants" amount to an abuse of process, as discrediting one's opponent is de rigueur in the course of litigation.  See ECF No. 65 ¶ 19.

Then, take the allegation that Joyce stated she would "take down" Defendants and ensure Smith "ended up in jail."  ECF No. 65 ¶¶ 8, 18.  While these statements certainly indicate Joyce's hostility towards Smith and the Company, her stated intentions are not inconsistent with a qui tam action.  Proving a defendant perpetrated fraud against the government could, for instance, be colloquially understood as a "take down" of the defendant.  Committing fraud against the government could also subject a defendant to imprisonment in certain instances.  See 18 U.S.C. § 1031 (criminalizing knowingly "defraud[ing] the United States[.]"); see also United States ex rel. Grant v. United Airlines, Inc., 912 F.3d 190, 197 (4th Cir. 2018) (noting the "quasi-criminal nature of FCA liability." (quotation marks and citation omitted)).  The allegations discussed above merely suggest, at worst, that Joyce is carrying out this litigation "to its authorized conclusion," which does not amount to an abuse of process, even if she harbors "bad intentions."  See Hainer, 492 S.E.2d at 107; see also Food Lion, Inc., 567 S.E.2d at 255 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 121 at 897 (5th ed. 1984) ("[E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created.")).

Defendants' clearest statement of Joyce's alleged motive is that her "stealing and profiting off of Defendant's property" formed "part of the motivation for Ms. Joyce bringing her allegation to the government."  ECF No. 65 ¶ 9 (emphasis added).  Joyce contends that allegations of "partial or collateral ulterior purpose are insufficient on their face."  ECF No. 67 at 14.  Though Defendants expand on this motive in their response

15

brief, calling it a "purpose of revenge[,]" they fail to directly respond to Joyce's argument that a partial motivation cannot constitute an ulterior purpose.  See ECF No. 68 at 5.

Joyce's allegedly vengeful motive cannot support a claim for abuse of process for two reasons.  First, a revenge motive is nothing more than "bad motive"—which the South Carolina Supreme Court has deemed "insufficient to sustain an abuse of process claim."  See Pallares, 756 S.E.2d at 134 (internal quotation marks and citation omitted); see also Food Lion, 576 S.E.2d at 255 (affirming trial court's grant of motion to dismiss an abuse of process claim when a plaintiff failed to allege a defendant "did not use the . . . [prior] lawsuit for its stated purpose," and had, therefore, "failed to assert any facts sufficient to show" the defendant's acts "were aimed not at its purported, and therefore proper, purpose of remedying alleged wrongs[.]").  Second, even assuming a revenge motive could constitute an ulterior purpose, any ulterior purpose "must [also] be the sole or paramount reason for acting[ ]" to support a claim for abuse of process.[6]  See Pallares, 756 S.E.2d at 134 ("[N]o action lies [for abuse of process] where a person has an incidental or concurrent motive of spite or merely seeks to gain a collateral advantage from the process.") (internal quotation marks and citation omitted); see also Food Lion, Inc., 576 S.E.2d at 255–56 ("One who uses a legal process against another primarily to accomplish a purpose for which it is not designed is subject to liability for abuse of process." (emphasis in original) (cleaned up)).  As such, even assuming it is true that Joyce was partially motivated by revenge after she was caught stealing Defendants'

---

[6] Defense counsel conceded at the hearing that a partial ulterior purpose would subject a claim for abuse of process to dismissal under South Carolina law.  See ECF No. 77.

property, such an allegation is insufficient to satisfy the ulterior purpose element of the tort.

Finally, Defendants' abuse of process claim is also deficient because, as noted by Joyce, it lacks any allegations suggesting she instituted this suit as a "form of coercion" to "obtain a collateral advantage[ ] not properly involved in the proceeding itself, such as the surrender of property or the payment of money," by using "the process as a threat or club." See Pallares, 756 S.E.2d at 134; Huggins, 153 S.E.2d at 696 (finding a criminal prosecution allegedly instituted to "to coerc[e] the plaintiff into paying ten dollars for merchandise that the store manager felt [plaintiff] had previously taken[ ]" was sufficient to constitute an ulterior purpose); see also ECF No. 67 at 15. For these reasons, the court finds that Defendants have failed to plausibly allege facts demonstrating Joyce acted with an impermissible ulterior purpose. Accordingly, Defendants have failed to state a claim for abuse of process, and the court will grant Joyce's motion to dismiss this claim.[7]

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** Joyce's motion to dismiss Defendants' counterclaims for unjust enrichment and abuse of process without prejudice.

---

[7] Because Defendants have failed to plausibly allege an ulterior purpose, the court need not address the willful act element of the tort.

17

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 3, 2026**
**Charleston, South Carolina**